DeAnne Kay Puccio
2725 Plainview Rd
Cheyenne, WY 82009
307-920-6582
pucciokay@gmail.com
DEANNE KAY PUCCIO, PRO SE

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING
2026 OCT 15 AM 9:43
MARGARET BOTKINS, CLERK
CHEYENNE

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF WYOMING**
**COUNTY OF - Cheyenne Division**

| | |
|---|---|
| **DeAnne Kay Puccio**<br>Plaintiffs,<br><br>vs.<br><br>**Laramie County**<br>**Laramie County Detention Center**<br>**Medtrust LLC**<br>**Lt. Perkins**<br>Defendants | Case No 26-CV-294<br><br>**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL** |

## COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Plaintiff DeAnne Kay Puccio, appearing pro se, brings this civil rights action against Defendants Laramie County, Laramie County Detention Center, Medtrust LLC, and Lt. Perkins, and alleges as follows:

### I. PARTIES

1. Plaintiff DeAnne Kay Puccio is an individual residing at 2725 Plainview Rd, Cheyenne, WY 82009. At all relevant times, Plaintiff was a pretrial detainee suffering from Multiple Sclerosis, a qualifying disability under the Americans with Disabilities Act and the Rehabilitation Act.

2. Defendant Laramie County is a political subdivision of the State of Wyoming with its principal office at 310 W. 19th #280, Cheyenne, WY 82001. Laramie County operates the Laramie County Detention Center and is responsible for the policies, customs, and practices governing the treatment of pretrial detainees held there.
3. Defendant Laramie County Detention Center is a county detention facility located at 1910 Pioneer Ave, Cheyenne, WY 82001. At all relevant times, LCDC was responsible for the custody, care, and medical treatment of Plaintiff during her pretrial detention from June 25 through June 27, 2025.
4. Defendant Medtrust LLC, doing business as MedHealth, is a limited liability company with its principal place of business at 8610 Broadway St, #270, San Antonio, TX 78217. Medtrust LLC contracted with Laramie County to provide medical services to pretrial detainees at the Laramie County Detention Center and acted under color of state law in the provision of those services.
5. Defendant Lt. Perkins is a supervisory officer at the Laramie County Detention Center, 1910 Pioneer Ave, Cheyenne, WY 82001, and is sued in his official capacity only. Lt. Perkins was responsible for responding to Plaintiff's formal grievance and took no corrective action to remedy the constitutional violations alleged herein.

## II. JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over Plaintiff's federal civil rights claims under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States, specifically 42 U.S.C. § 1983, the Fourteenth Amendment to the United States Constitution, Title II of the Americans with Disabilities Act codified at 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act codified at 29 U.S.C. § 794(a).
7. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this action occurred in Laramie County, Wyoming, which lies

within the District of Wyoming, and because all Defendants except Medtrust LLC reside in this District. Medtrust LLC is subject to personal jurisdiction in this District because it contracted to provide medical services within Wyoming and committed tortious acts within this District.

8. Plaintiff's claims are timely. Under the applicable four-year statute of limitations for civil rights actions brought in Wyoming, as established in Gee v. Pacheco, 627 F.3d 1178, 1189–90 (10th Cir. 2010), Plaintiff's claims accrued between June 25 and June 27, 2025, and in September 2025 when her administrative grievance was dismissed without remedy. This complaint is filed within four years of those events.

## III. FACTUAL ALLEGATIONS

### A. Plaintiff's Disability and Medical Alert Bracelet

9. Plaintiff DeAnne Kay Puccio suffers from Multiple Sclerosis, a chronic, progressive neurological disease that affects the central nervous system and causes a wide range of symptoms including lethargy, vertigo, unsteady gait, vision changes, extreme muscle weakness, difficulty speaking, and cognitive difficulties.

10. Because of the seriousness of her condition and the need for immediate medical attention during an MS relapse, Plaintiff wore a medical alert bracelet at all times, including during her pretrial detention from June 25 through June 27, 2025.

11. The medical alert bracelet clearly identified Plaintiff's MS diagnosis and the critical need for prompt medical evaluation and treatment in the event of a relapse.

### B. Plaintiff's Pretrial Detention and MS Relapse

12. On or about June 25, 2025, Plaintiff was arrested and confined as a pretrial detainee at the Laramie County Detention Center. Plaintiff had not been convicted of any crime and

retained her constitutional right to be free from deliberate indifference to serious medical needs under the Fourteenth Amendment's Due Process Clause.

13. During her detention from June 25 through June 27, 2025, Plaintiff suffered an acute Multiple Sclerosis relapse with severe and observable symptoms including lethargy, vertigo, unsteady gait, vision changes, extreme muscle weakness, difficulty speaking, and cognitive difficulties.

14. Plaintiff repeatedly informed all detention officers and medical staff employed by Defendants of her MS condition and her need for immediate medical attention. Despite these repeated notifications and the presence of the medical alert bracelet, staff members ignored or misidentified the bracelet and failed to provide appropriate medical care.

**C. Plaintiff's Hand Injury and Lack of Medical Response**

15. In an effort to attract the attention of detention staff after being repeatedly ignored despite her visible and worsening symptoms, Plaintiff struck a steel door with her right hand.

16. As a direct result, Plaintiff suffered a significant right hand and arm injury including bruised knuckles, swelling, severe arm contraction, muscle tremors, inability to move her right fingers, hand, and arm, and oxygen deprivation to her right hand and fingers.

17. Despite the visible nature of Plaintiff's injuries and her continued pleas for medical attention, medical staff employed by Defendant Medtrust LLC failed to perform even the most basic medical assessments. Specifically, Medtrust medical staff failed to take Plaintiff's blood pressure, check her pulse, assess her breathing, check her pupillary response, test grips or push and pull of her hands and feet, perform a tilt test, supply an ice pack for her injured hand, or assess the extent of her hand and arm injury.

18. Medtrust medical staff refused to call Plaintiff's neurologist or to call 911 for emergency medical transport, despite Plaintiff's repeated requests and the objectively serious nature of her medical condition.

19. Instead of providing medical care, Medtrust medical staff accused Plaintiff of faking her symptoms and treated her in a manner that deprived her of human dignity.

**D. Blood Pressure Crisis and Denial of Basic Needs**

20. During her detention, Plaintiff's blood pressure reached a life-threatening level of 190/110, constituting a hypertensive crisis requiring immediate medical intervention.

21. Defendants failed to provide Plaintiff with adequate hydration, sleep, or food during her detention, exacerbating both her MS symptoms and her hypertensive crisis.

**E. Post-Release Medical Diagnoses and Ongoing Harm**

22. Following her release on June 27, 2025, Plaintiff sought immediate medical treatment from qualified medical professionals.

23. Plaintiff had right hand, arm, and shoulder x-rayed by Dr. Daniel Kisicki, Sports Medicine, and diagnosed with severe tendonitis by Dr. Joseph Looby, DO, in her right arm as a direct result of the injury she sustained while detained. Plaintiff required an arm brace and physical therapy to address this injury.

24. Plaintiff was diagnosed by an Optometrist, Dr. Alyssa Hopkins, with optic neuritis, a serious inflammatory condition affecting the optic nerve that is commonly associated with Multiple Sclerosis relapses. Treatment required rest, darkness, and adequate fluids—none of which Defendants provided during her detention.

25. As a direct and proximate result of Defendants' deliberate indifference to her serious medical needs and disability-based discrimination, Plaintiff has suffered severe and ongoing physical injuries, pain and suffering, emotional distress, and financial harm.

26. Plaintiff has been unable to pay her rent, utilities, phone bill, groceries, gasoline, internet service, pet food, and other basic living needs as a result of the injuries she sustained while in Defendants' custody.

**F. Exhaustion of Administrative Remedies**

27. In July 2025, Plaintiff filed a formal written grievance with the Laramie County Detention Center front desk detailing the constitutional violations and deliberate indifference to her serious medical needs. Defendants failed to respond to this grievance.

28. On or about September 9, 2025, Lt. Perkins informed Plaintiff that the matter would be "handled in-house" and that Plaintiff would receive no further contact or response regarding her grievance.

29. Plaintiff has fully exhausted all available administrative remedies as required by 42 U.S.C. § 1997e(a), which mandates exhaustion of available administrative remedies before a prisoner or pretrial detainee may bring a federal action concerning prison or detention conditions.

30. Despite her good-faith efforts to exhaust administrative remedies, Defendants have failed to provide any meaningful response or remedy for the constitutional violations alleged herein.

**G. Risk of Spoliation of Evidence**

31. Plaintiff is informed and believes, and on that basis alleges, that the Laramie County Detention Center maintains surveillance video footage and medical records documenting Plaintiff's detention, her visible symptoms, her requests for medical care, and the failure of Defendants to provide constitutionally adequate medical treatment.

32. Plaintiff is concerned that this evidence may be destroyed, altered, or lost unless Defendants are ordered to preserve it. Cheyenne Police Officer Dominic LaPorta is a material witness to relevant facts in this case.

## IV. COUNT I — 42 U.S.C. § 1983 FOURTEENTH AMENDMENT DUE PROCESS DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS

33. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 32 as if fully set forth herein.

34. At all relevant times, Plaintiff was a pretrial detainee who had not been convicted of any crime and was entitled to the protections of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

35. Under 42 U.S.C. § 1983, a person acting under color of state law who deprives another of federal rights may be sued for redress. All Defendants acted under color of state law when providing custodial care and medical services to Plaintiff during her pretrial detention.

36. As established in Strain v. Regalado, 977 F.3d 984, 989–93 (10th Cir. 2020), a pretrial detainee alleging deliberate indifference to serious medical needs must establish that she suffered from an objectively serious medical need and that the defendants were subjectively aware of and deliberately disregarded an excessive risk to her health or safety.

37. Plaintiff's Multiple Sclerosis relapse, her visible and worsening neurological symptoms, her blood pressure crisis of 190/110, her right hand and arm injury, and her optic neuritis each constitute objectively serious medical needs requiring prompt medical evaluation and treatment.

38. Defendants were subjectively aware of Plaintiff's serious medical needs through her medical alert bracelet, her repeated verbal notifications to detention officers and medical staff, and the visible and observable nature of her symptoms and injuries.

39. Despite this awareness, Defendants deliberately disregarded the excessive risk to Plaintiff's health and safety by failing to perform basic medical assessments, refusing to call her neurologist or 911, accusing her of faking her symptoms, failing to treat her hypertensive crisis, and denying her adequate hydration, nutrition, and rest.

40. Defendants' deliberate indifference directly and proximately caused Plaintiff to suffer severe physical injuries including severe tendonitis requiring an arm brace and physical therapy, optic neuritis requiring specialized treatment, prolonged pain and suffering, emotional distress, and ongoing financial hardship.

41. As a direct and proximate result of Defendants' violations of Plaintiff's Fourteenth Amendment rights, Plaintiff is entitled to compensatory damages, punitive damages, and such other relief as the Court deems just and proper.

## V. COUNT II — TITLE II OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12132

42. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 41 as if fully set forth herein.

43. Title II of the Americans with Disabilities Act, codified at 42 U.S.C. § 12132, prohibits a public entity from denying a qualified individual public services or discriminating against that individual by reason of disability.

44. Plaintiff is a qualified individual with a disability within the meaning of the ADA. Multiple Sclerosis is a physical impairment that substantially limits one or more major life activities including walking, speaking, seeing, and performing manual tasks.

45. Defendants Laramie County and the Laramie County Detention Center are public entities within the meaning of Title II of the ADA and are required to provide pretrial detainees with disabilities reasonable accommodations and equal access to medical services.

46. Defendants discriminated against Plaintiff on the basis of her disability by ignoring or misidentifying her medical alert bracelet, dismissing her repeated notifications of her MS condition, accusing her of faking her symptoms, and denying her access to appropriate medical evaluation and treatment that would have been provided to a non-disabled detainee presenting with comparable objective medical symptoms.

47. Defendants' refusal to provide Plaintiff with constitutionally adequate medical care was motivated by deliberate indifference to her disability and resulted in her exclusion from the benefit of medical services available to other pretrial detainees.

48. As established in Havens v. Colo. Dep't of Corr., 897 F.3d 1250, 1263–66 (10th Cir. 2018), compensatory damages under the Rehabilitation Act and by extension under Title II of the ADA require a showing of intentional discrimination, which can be established by deliberate indifference to likely violations of protected rights.

49. Defendants' conduct demonstrates intentional discrimination and deliberate indifference to Plaintiff's rights under Title II of the ADA.

50. As a direct and proximate result of Defendants' violations of Title II of the ADA, Plaintiff is entitled to compensatory damages and such other relief as the Court deems just and proper.

## VI. COUNT III — SECTION 504 OF THE REHABILITATION ACT, 29 U.S.C. § 794(a)

51. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 50 as if fully set forth herein.

52. Section 504 of the Rehabilitation Act, codified at 29 U.S.C. § 794(a), prohibits disability-based exclusion or discrimination against an otherwise qualified person in a program receiving federal financial assistance, solely by reason of disability.

53. Defendants Laramie County, the Laramie County Detention Center, and Medtrust LLC operate programs and provide services that receive federal financial assistance.

54. Plaintiff is an otherwise qualified individual with a disability within the meaning of Section 504 of the Rehabilitation Act.

55. Defendants discriminated against Plaintiff solely by reason of her disability by denying her equal access to medical services, ignoring her medical alert bracelet and repeated notifications of her MS condition, and failing to provide her with the reasonable accommodations necessary to ensure that she received constitutionally adequate medical care during her pretrial detention.

56. Defendants' intentional discrimination and deliberate indifference to Plaintiff's disability-related medical needs caused Plaintiff to suffer severe physical injuries, pain and suffering, emotional distress, and financial harm.

57. As a direct and proximate result of Defendants' violations of Section 504 of the Rehabilitation Act, Plaintiff is entitled to compensatory damages and such other relief as the Court deems just and proper.

## VII. COUNT IV — MONELL LIABILITY AGAINST LARAMIE COUNTY AND LARAMIE COUNTY DETENTION CENTER FOR POLICY, CUSTOM, AND FAILURE TO TRAIN

58. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 57 as if fully set forth herein.

59. As established in Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690–94 (1978), a municipality is liable under 42 U.S.C. § 1983 only when its policy or custom causes the constitutional violation.

60. Defendants Laramie County and the Laramie County Detention Center maintained policies, customs, and practices that caused the constitutional violations alleged herein, including but not limited to policies and customs regarding the identification and treatment of pretrial detainees with serious medical conditions, the recognition and response to medical alert bracelets, the provision of emergency medical care, and the training and supervision of detention officers and contracted medical staff.

61. As established in City of Canton v. Harris, 489 U.S. 378, 388–92 (1989), a municipality's deficient training creates liability under Section 1983 only if it reflects deliberate indifference to constitutional rights and causes the injury.

62. Defendants Laramie County and the Laramie County Detention Center failed to adequately train and supervise detention officers and contracted medical providers regarding the constitutional rights of pretrial detainees to be free from deliberate indifference to serious medical needs and the rights of detainees with disabilities to reasonable accommodations and equal access to medical services.

63. This failure to train and supervise reflects deliberate indifference to the constitutional rights of pretrial detainees and directly and proximately caused the violations of Plaintiff's Fourteenth Amendment rights and her rights under the ADA and Rehabilitation Act.

64. As a direct and proximate result of Defendants Laramie County's and the Laramie County Detention Center's policies, customs, and failures to train and supervise, Plaintiff is entitled to compensatory damages and such other relief as the Court deems just and proper.

## VIII. COUNT V — MEDTRUST LLC LIABILITY FOR UNCONSTITUTIONAL POLICY, CUSTOM, AND FAILURE TO TRAIN

65. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 64 as if fully set forth herein.

66. As established in Lucas v. Turn Key Health Clinics, LLC, 58 F.4th 1127, 1144–45 (10th Cir. 2023), a private jail medical contractor acting under color of state law is subject to policy-or-custom liability, requiring an identified policy, causation, and deliberate indifference rather than employee misconduct alone.

67. Defendant Medtrust LLC maintained policies, customs, and practices governing the provision of medical services to pretrial detainees at the Laramie County Detention Center that caused the constitutional violations alleged herein.

68. These policies, customs, and practices include but are not limited to Medtrust's failure to require its medical staff to perform basic medical assessments on detainees presenting with serious medical symptoms, its policy of dismissing or minimizing complaints from detainees with neurological disabilities, its failure to provide emergency medical referrals or 911 transport when medically necessary, and its failure to recognize and respond appropriately to medical alert bracelets.

69. Medtrust LLC failed to adequately train and supervise its medical staff regarding the constitutional rights of pretrial detainees to be free from deliberate indifference to serious medical needs and the obligations of medical providers under the ADA and Rehabilitation Act to provide equal access to medical services for individuals with disabilities.

70. Medtrust's policies, customs, and failures to train and supervise reflect deliberate indifference to the constitutional and statutory rights of pretrial detainees and directly and proximately caused the violations of Plaintiff's rights alleged herein.

71. As a direct and proximate result of Medtrust LLC's unconstitutional policies, customs, and failures to train and supervise, Plaintiff is entitled to compensatory damages, punitive damages, and such other relief as the Court deems just and proper.

## IX. DEMAND FOR JURY TRIAL

72. Under Federal Rule of Civil Procedure 38(b), a jury demand may appear in a pleading and must be served no later than 14 days after the last pleading directed to the issue. Plaintiff hereby demands a trial by jury on all issues so triable as a matter of right.

## X. PRAYER FOR RELIEF

WHEREFORE, Plaintiff DeAnne Kay Puccio respectfully requests that this Court enter judgment in her favor and against Defendants as follows:

A. Award Plaintiff compensatory damages in the amount of Fifteen Million Dollars ($15,000,000.00) for her physical injuries, pain and suffering, emotional distress, financial losses, and all other damages proximately caused by Defendants' violations of her constitutional and statutory rights;

B. Award Plaintiff punitive damages against each Defendant in an amount sufficient to punish and deter future violations of the constitutional and statutory rights of pretrial detainees;

C. Award Plaintiff her costs of suit and reasonable attorney's fees under 42 U.S.C. § 1988(b), which provides that the court may award a reasonable attorney's fee as costs to a prevailing party enforcing Section 1983;

D. Grant Plaintiff a trial by jury on all issues so triable;

E. Order Defendants to preserve all surveillance video footage, medical records, grievance files, and other documentary evidence relating to Plaintiff's detention from June 25 through June 27, 2025, and to produce such evidence during discovery; and

F. Grant such other and further relief as the Court deems just and proper.

DATED: 10/15/2026

DeAnne Kay Puccio

DeAnne Kay Puccio
Plaintiff In Pro Per
2725 Plainview Rd
Cheyenne, WY 82009